## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

STEPHEN E. SIGL,

Petitioner,

- against -

STATE OF NEW YORK,

Respondent.

DECISION AND ORDER
14-CV-6383-CJS

## APPEARANCES

For Petitioner:          Stephen E. Sigl 08B3709, *pro se*
                         Clinton Correctional Facility
                         P.O. Box 2002
                         Dannemora, NY 12929

For Respondent:          Alyson J. Gill, A.A.G.
                         New York State Attorney General's Office
                         120 Broadway
                         New York, New York 10271
                         (212) 416-6037

## INTRODUCTION

**Siragusa, J.** Petitioner Stephen E. Sigl, proceeding *pro se*, seeks a writ of habe-as corpus pursuant to 28 U.S.C. § 2254 vacating his convictions in Monroe County Court for burglary in the first degree and sodomy in the first degree. For the reasons that follow, the petition is denied.

## BACKGROUND

### *Factual Background*

On December 11, 2000, the victim, C.S., awoke to an unknown man kneeling next to her futon. (Test. of C.S., Trial Tr. 238, 262, Sept. 24, 2008.) Her front door was locked, but the window in the bedroom where her daughter slept was not. (Test. of C.S., Trial Tr. 249; State R. at 10.) Although the lights in her apartment were off and she was

unable to see the man's face, illumination from a streetlight allowed her to see that he was bald and had no facial hair or eyebrows. (Test. of C.S., Trial Tr. 245, 257.) C.S. also saw that he had a dull, brown, eight to twelve inch hunting knife with a six inch blade. (Test. of C.S., Trial Tr. 239, 253-254.)

The intruder alternately placed his penis in her mouth and vagina. (Test. of C.S., Trial Tr. 241, 263-264.) C.S. did not resist because he threatened to hurt her daughter if she did not cooperate. (Test. of C.S., Trial Tr. 239, 243.) He eventually ejaculated in her mouth, and she spit the semen onto the front of her shirt. (Test. of C.S., Trial Tr. 242.)

The man rolled C.S. onto her stomach, shoved her head into the pillow, and asked where her purse was. (Test. of C.S., Trial Tr. 243.) She told him, and he left through the bedroom window. (Test. of C.S., Trial Tr. 244-245.) C.S. checked on her daughter, who was unharmed, and reported the incident to the police. (Test. of C.S., Trial Tr. 245-246.) C.S. noticed her purse was gone and a pair of unfamiliar leather work gloves had been left in her living room. (Test. of C.S., Trial Tr. 247.)

When Greece Police Officer William Murphy ("Murphy") arrived at C.S.'s apartment, he noticed C.S. was distraught and that she had red marks on her neck. (Test. of Murphy, Trial Tr. 272-274, 287, Sept. 24, 2008.) These red marks were also noted by Dr. Joseph Giangreco during the completion of C.S.'s subsequent medical exam and sexual assault kit at Park Ridge Hospital. (Test. of Giangreco, Trial Tr. 343, 345, Sept. 24, 2008.) Dr. Giangreco also collected samples of C.S.'s saliva and DNA and gave her clothing to Murphy. (Test. of C.S., Trial Tr. 346; Test. of Murphy, Trial Tr. 278, 280-81; Test. of Giangreco, Trial Tr. 347, 350.)

When police processed C.S.'s apartment, they collected C.S.'s bedding and a pair of tar-stained leather work gloves. (Test. of Cole, Trial Tr. 309-310, 313-314, Sept. 24, 2008.) There was mud on the living room floor and a boot print outside the open bedroom window. (Test. of Cole, Trial Tr. 300-301, 305-307, 310.) An evidence technician took a cast of the boot print using Dental Stone. (Test. of Cole, Trial Tr. 307.) Police also dusted for prints and dispatched a canine unit, but neither of these efforts yielded further evidence. (Test. of Murphy, Trial Tr. 276; Test. of Cole, Trial Tr. 311-313, 315-318; State R. at 97.) C.S. met with a forensic sketch artist, and the resulting image was circulated throughout the area. (State R. at 97.) Police also interviewed a man arrested for peeping into windows in the area, but determined that he was not involved. (State R. at 102.) C.S.'s shirt was later sent to a lab for processing, and it was determined that the stain on the shirt was sperm. (State R. at 97-98.) A male DNA profile was extracted and entered into the Combined DNA Indexing System ("CODIS").[1] (State R. at 98.)

On or about March 6, 2008, the DNA from C.S.'s shirt was matched through CODIS with Stephen E. Sigl's DNA. (State R. at 98.) Sigl had been convicted of petit larceny in Greece Town Court in 2007. (State R. at 170.) Following completion of his sentence for that crime, a sample of Sigl's DNA was collected on approximately November 7, 2007. (State R. at 170) Subsequently, his DNA profile was entered into the New York state database, leading to the March 6, 2008, match. (State R. at 170.)

_____

[1]The Combined DNA Indexing System, or CODIS, is a database and computer software system designed to find matches between DNA profiles from unsolved crimes and DNA profiles from arrestees, convicted offenders, and other unsolved crimes. *CODIS and NDIS Fact Sheet*, Federal Bureau of Investigations, https://www.fbi.gov/about-us/lab/biometric-analysis/codis/codis-and-ndis-fact-sheet (last visited July 1, 2015).

Two armed, plainclothes officers, Greece Police Sgt. Michael Roffe and his part-
ner Sgt. Chizuk, went to Sigl's apartment on March 20, 2008. (State R. at 27, 98.) Sigl's
elderly father answered the door, and the officers indicated that they wanted to speak
with his son. (State R. at 27.) It is not clear whether they identified themselves as police
officers. (State R. at 27.) Sigl's father silently walked back into the apartment, and the
officers followed him to the dining area where Sigl was sitting. (State R. at 27.) They told
Sigl that they had questions about an investigation, and that he needed to come with
them to the station. (State R. at 27.) Sigl indicated that he would prefer to answer ques-
tions in his apartment and asked what the investigation was about. (State R. at 27.)
However, the officers said that he needed to come to the station and that they would tell
him there. (State R. at 27.)

At the police station, Sgt. Roffe read Sigl his *Miranda* rights, and Sigl indicated he
understood them and that he waived them. (Test. of Roffe, Trial Tr. 368-371, Sept. 24,
2008.) When questioned about the incident, Sigl stated that he did not know C.S., that
they had not had sex, that he was not involved in the crime, and that he had no expla-
nation for why his DNA was on her shirt. (Test. of Roffe, Trial Tr. 372-375, 394.) Sigl did
say that he was familiar with C.S.'s apartment complex because he had family in the
area. (Test. of Roffe, Trial Tr. 375.) The police recorded Sigl's statement in writing, but
he refused to sign it. (Test. of Roffe, Trial Tr. 376.)

After the conclusion of the interview, Sigl was placed under arrest and accu-
satory instruments were filed. (State R. at 98.) The indictment charged him with one
count of robbery in the first degree, one count of burglary in the first degree, two counts
of rape in the first degree and four counts of sodomy in the first degree in connection

with the events of December 11, 2000. (State R. at 129-130.) Sigl was arraigned in

Monroe County Court on April 7, 2008. (State R. at 98.)

***Procedural History***

Defense counsel moved to dismiss the indictment, arguing the offenses were

barred by the statute of limitations and the unreasonable delay in prosecuting Mr. Sigl

violated his due process rights. (State R. at 12.) The prosecution replied that the statute

of limitations was tolled by N.Y. Crim. Proc. Law § 30.10(4)(a)(ii) because police could

not have ascertained the identity or whereabouts of a suspect by the exercise of rea-

sonable diligence, and after reviewing the police's investigative efforts, the court agreed

and denied the motion. (State R. at 12-13.)

Sigl's counsel also argued that his statement to police should be suppressed be-

cause his father had not consented to police entry into the apartment; therefore, Sigl

was illegally arrested in his home without a warrant. (State R. at 24.) This motion was

also denied. (State R. at 24.) Sigl's defense at trial was that C.S. had consented to the

sexual encounter, which contradicted his unsigned statement. (State R. at 31-32, 174.)

Defense counsel made a general motion for a trial order of dismissal of the

charges on the ground that the People had failed to make a "prima facie case" with re-

spect to any counts of the indictment. (State R. at 172-73.) This motion was denied.

(State R. at 173.) The jury convicted defendant of one count of burglary in the first de-

gree and one count of sodomy in the first degree, and acquitted defendant of robbery in

the first degree, two counts of rape in the first degree, and the three counts of sodomy

in the third degree. (State R. at 173.)

On appeal to the Appellate Division of the New York State Supreme Court,

Fourth Department, defense counsel again argued that the statute of limitations had ex-

pired, that Sigl's statement to police was obtained after an illegal arrest and should have been suppressed, and, further, that the verdict was against the weight of the evidence. (State R. at 188-189.) The court affirmed Sigl's conviction after addressing and rejecting each of these contentions. (State R. at 188-189.)

In the application for leave to appeal to the New York State Court of Appeals, defense counsel raised only the statute of limitations argument regarding investigative due diligence. (State R. at 191.) Leave to appeal was denied.

Proceeding *pro se*, Sigl now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 vacating his convictions. He contends that 1) the statute of limitations had expired and that no tolling provisions applied, 2) his sentence was excessive, 3) the evidence was insufficient to establish all elements of the crimes, and 4) he was arrested unlawfully and his subsequent statement to police should have been suppressed. (ECF No. 1, Pet. for Writ of Habeas Corpus 6-7) ("Habeas Corpus Pet.".)

## ANALYSIS

### Standard of Review

A federal writ of habeas corpus is only available to a person in custody pursuant to a state court judgment if he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Specifically, a federal district court may only grant a petitioner's writ of habeas corpus related to claims adjudicated on the merits in state court proceedings if the claims presented resulted in a decision "contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States" or "resulted in a decision based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

Here, "clearly established Federal law, as determined by the Supreme Court of the United States" includes only the "holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court's decision is "contrary to" federal law when it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* A state court's decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. *Id.*

A federal court does not function as an appellate court to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts when it reviews a state prisoner's federal habeas petition. Rather, the court only determines whether the proceedings in state court amount to a violation of federal constitutional rights. *Coleman v. Thompson*, 501 U.S. 722 730 (1991). Federal review of a state court conviction is limited to errors of federal constitutional magnitude which denied a criminal defendant the right to a fundamentally fair trial. *Cupp v. Naughton*, 414 U.S. 141, 144 (1973).

### *Exhaustion*

Before seeking habeas relief under 28 U.S.C. § 2254, a petitioner must exhaust all remedies in state courts or demonstrate that there is no available State corrective process that can effectively protect his rights. 28 U.S.C. § 2254(b). Absent a showing of cause and prejudice, a petitioner's federal claims must have been included in both the petitioner's appeal to the state's intermediate appellate court and in an application for

permission to appeal to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainright v. Sykes*, 433 U.S. 72, 87–88 (1977).

In this case, Sigl's claim that the Greece police did not investigate diligently enough to toll the statute of limitations is the only claim that was raised in both his Fourth Department appeal and his application for leave to appeal to the New York Court of Appeals. Although Sigl does not explicitly tie his investigative diligence claim to statutes of limitations concerns in his petition, because *pro se* pleadings must be interpreted liberally, this claim should be considered exhausted. *See Billy-Eko v. United States*, 8 F.3d 111, 117 (2d Cir. 1993) (recognizing a "judicial interest in interpreting *pro se* pleadings liberally and in the interests of fairness to *pro se* litigants").

None of his other claims—that lack of a DNA indictment prevented tolling of the statute of limitations, that his sentence was excessive, that the evidence was insufficient to establish all elements of the crimes, or that his arrest was unlawful and his subsequent statement should have been suppressed—were raised in both his intermediate appeal and in his application to appeal to New York's highest court, and so are unexhausted.

However, since Sigl has already used his one appeal and one leave to appeal allowable under state law, there is no state forum remaining for him to raise these claims. Petitioner has, therefore, procedurally defaulted on these claims. *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993), *cert. denied*, 510 U.S. 1078 (1994); s*ee Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991). Absent a showing of cause and prejudice for a procedural default, or alleging innocence, a petitioner cannot raise such procedur-

ally defaulted claims on federal habeas review. *Murray,* 477 U.S. at 490-91; *Carter v. United States*, 150 F.3d 202, 205 (2d Cir. 1998). Sigl has not proffered evidence of innocence, or explanations of cause or prejudice related to these claims, save alleging that his counsel refused to include the unlawful arrest issue in his application for leave to appeal to the New York Court of Appeals. *See generally* ECF No. 1, Habeas Corpus Pet. Further, there is no Constitutional right to effective assistance of counsel related to a secondary or discretionary appeal, so this allegation is not sufficient cause to overcome procedural default. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (stating that "right to appointed counsel extends to the first appeal of right, and no further" and "reject[ing] suggestions that we establish a right to counsel on discretionary appeals"); *Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982); *See also Hernandez v. Greiner*, 414 F.3d 266, 269 (2d Cir. 2005) (discussing various Supreme Court decisions related to ineffective assistance of counsel and holding that ineffective assistance of counsel in a discretionary appeal is not grounds for federal habeas corpus relief).

### Merits

Sigl's only exhausted claim relates to his argument that the statute of limitations had expired because the police investigation was insufficiently diligent to toll the statute of limitations. However, an application for habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust available state court remedies, so all of Sigl's claims are addressed below. 28 U.S.C. § 2254(b)(2).

### Statute of Limitations

There is no constitutional due process concern if a defendant is charged within a state's statute of limitations, as long as the delay is not a tactical ploy to gain an unfair advantage over the accused. *United States v. Marion*, 404 U.S. 307, 321, 324 (1971).

Additionally, investigative delays within the statute of limitations are permitted so long as they do not seriously prejudice the defense. *United States v. Lovasco*, 431 U.S. 783, 789-790 (1977). Since statute of limitations claims thus essentially present only a state law issue, they are not cognizable on federal habeas corpus review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Rolle v. Graham*, No. 10 Civ. 5258 (PAC) (RLE), 2011 U.S. Dist. LEXIS 146111, *11 (S.D.N.Y. Jan. 31, 2011) (holding that a delay in prosecution based on a state's statute of limitations is not cognizable on habeas review).

Regardless, prosecution was timely under relevant New York law. At that time, there was a five-year statute of limitations for all the felonies charged in this case, although the statute of limitations could be tolled where a defendant's "whereabouts were continuously unknown and continuously unascertainable by the exercise of reasonable diligence." N.Y. Crim. Proc. Law § 30.10(2)(b), (4)(a)(ii) (McKinney 2014).[2]

Sigl argues that this tolling provision should not apply for two reasons. First, he suggests that since police had a DNA sample, his whereabouts were known or ascertainable and that the police were required to have the DNA indicted to prevent the statute of limitations from expiring. However, Sigl's identity was unknown, and his whereabouts therefore unascertainable, until the DNA match in CODIS in 2008. This match was not possible before Sigl's DNA profile was entered into the New York database upon his release for an unrelated misdemeanor case. Prosecutors have occasionally chosen to indict DNA to avoid statute of limitations issues in similar circumstances, but there is no authority suggesting that prosecutors must indict DNA for §30.10(4)(a)(ii) to apply. Conversely, the tolling provision in §30.10(4)(a)(ii) applies when a "defendant's

---

[2] The statute of limitations for sodomy has since been extended. For a detailed description of the 2006 changes to the statute of limitations for felonies, please refer to the relevant Editors' Notes included with N.Y. Crim. Proc. Law § 30.10.

whereabouts were continuously unknown and continuously unascertainable by the exercise of reasonable diligence until his DNA profile from a sexual assault evidence kit was matched to DNA evidence taken from him pursuant to a subsequent incarceration." *People v. Ramos*, 61 A.D.3d 783, 783 (N.Y. App. Div. 2nd Dep't 2009), *aff'd*, 13 N.Y.3d 881, 881–82 (2009) ("Although the indictment was nearly 10 years after the incident, defendant's whereabouts were 'continuously unknown and continuously unascertainable,' despite the reasonable diligence of the detectives assigned to the case, until his DNA profile from the rape kit taken from the victim was matched to DNA evidence taken from defendant pursuant to a subsequent incarceration. . . ."); *see also People v. Grogan*, 816 N.Y.S.2d 93, 95 (2006) *abrogated on other grounds by People v. Rawlins*, 10 N.Y.3d 136 (2008) (holding that 30.10(4)(a)(ii) applied even though defendant was not identified through a DNA match and indicted until eight years after the crime).

Alternatively, Sigl argues that the tolling provision should not apply because there is no evidence showing that the police exercised "reasonable diligence" in their investigation. Contrary to Sigl's claim, the record details the many avenues police pursued during their investigation. Police processed the scene for fingerprints and other evidence, collected gloves and C.S.'s bedsheets, took a cast of a boot print from the scene, canvassed the area with a canine unit, distributed a sketch, had a rape kit and a medical exam performed on C.S., sent possible DNA samples to a lab for testing, and questioned possible suspects.

Additionally, Sigl specifically points to the fact that police did not establish the exact date the suspect's DNA profile from C.S.'s shirt was entered into CODIS. Even if there was a delay in processing the DNA sample and entering the profile into CODIS,

such delays have no effect on the diligence of a police investigation for the purposes of the tolling provision. *People v. Brown*, 13 N.Y.3d 332, 340 (2009) (concluding that police exercised "reasonable diligence" even though a lab backlog delayed DNA testing); *see People v. Rolle*, 59 A.D.3d 169, 169-170 (N.Y. App. Div. 1st Dep't 2009) (stating police only needed to take reasonable, not exhaustive, investigative steps to meet the "reasonable diligence" requirement of the tolling provision). Therefore, the tolling provision applied and prosecution was timely.

### Excessive Sentence

Sigl claims that his sentence was excessive. However, a prisoner may not challenge the length of a sentence that does not exceed the maximum set by state law in a federal habeas application because it does not present a federal question. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Since Sigl's sentence is within the range prescribed by the New York Penal Law, he cannot raise this issue in his habeas corpus petition.

### Sufficiency of the Evidence

A habeas petitioner challenging the sufficiency of the evidence bears a heavy burden. *Knapp v. Leonardo*, 46 F.3d 170, 178 (2d Cir. 1995), *cert. denied*, 515 U.S. 1136 (1995). The federal habeas court looks to state law when determining the essential elements of a crime and must uphold a conviction if, when viewing trial evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

In making this assessment, a federal habeas court must "credit every inference that could have been drawn in the state's favor . . . whether the evidence being re-

viewed is direct or circumstantial." *Reddy v. Coombe*, 846 F.2d 866, 869 (2d Cir. 1988), *cert. denied*, 488 U.S. 929 (1988). The jury is also permitted to "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Thus, when faced with a record from which conflicting inferences may be drawn, a federal habeas court must presume, even if the record does not show it affirmatively, that the trier of fact resolved the conflict in favor of the prosecution and must defer to that resolution. *See Wright v. West*, 505 U.S. 277, 297 (1992).

A person commits Burglary in the First Degree in New York when he "knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein," and "uses or threatens the immediate use of a dangerous instrument" while in the dwelling. N.Y. Penal Law § 140.30 (McKinney 1981). Further, "a person 'enters or remains unlawfully' in or upon premises when he is not licensed or privileged to do so." N.Y. Penal Law § 140.00(5) (McKinney 1979); *People v. Graves*, 76 N.Y.2d 16, 19 (1990).

Despite Sigl's allegations to the contrary, the record contains ample evidence to support his conviction of Burglary in the First Degree. For instance, the muddy boot prints in the living room and outside the bedroom window, along with C.S.'s testimony, adequately establish that Sigl entered the apartment without permission. A rational trier of fact could conclude that Sigl threatened C.S. with a knife from C.S.'s testimony and her neck bruises noted by Dr. Giangreco. C.S. testified that her attacker entered the apartment at night without permission, sodomized her at knifepoint and stole her purse, providing sufficient evidence to justify the jury's conclusion that Sigl intended to commit a crime within the apartment.

Sigl also argues that, since the indictment charged him with entering with the intention specifically to commit rape, but he was not convicted of this charge, the prosecution failed to make a case for burglary. This assertion is inaccurate. The burglary indictment did not reference rape; rather, it more generally alleged that Sigl "entered or remained unlawfully in a dwelling … with intent to commit a crime therein." (State R. at 42.) Further, there is no requirement that the prosecution prove the particular crime that a defendant intends to commit inside the burglarized building. *People v. Cajigas*, 19 N.Y.3d 697, 701 (2012). Sigl's sufficiency of the evidence claim is therefore without merit.

### *Unlawful Arrest*

Sigl claims that he was unlawfully arrested in his apartment in violation of the Fourth Amendment and *Payton v. New York*, 445 U.S. 573 (1980), and that his subsequent statement to police should therefore be suppressed. Generally, if  a state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. *Stone v. Powell*, 428 U.S. 465, 481–82 (1976).

There are few exceptions where habeas corpus relief based on such Fourth Amendment claims can be granted. A petitioner must demonstrate either that: (1) the state failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated; or (2) the state had such procedures in place, but that the petitioner was "precluded from utilizing it by reason of an unconscionable breakdown in that process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977).

Sigl has not alleged that the state failed to provide any "corrective procedures" to litigate his Fourth Amendment claim, and federal review on the basis of an "unconscionable breakdown" is only appropriate if the state's corrective process was rendered "meaningless [because] the totality of state procedures allegedly did not provide rational conditions for inquiry into federal law . . . questions." *Capellan*, 975 F.2d at 70. Further, if the state courts have a corrective appellate procedure that fairly determined that constitutional violations did not occur, federal collateral review is unnecessary. *Id.* The federal courts have already approved New York's procedure for litigating Fourth Amendment claims. *Capellan*, 975 F.2d at 70 n.1 (internal quotation and citations omitted); *McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69 (2d Cir. 1983). So, this claim provides no basis for habeas relief.

## CONCLUSION

For all of the foregoing reasons, petitioner's application for a writ of habeas corpus is denied, and the petition is dismissed. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals *in forma pauperis* is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Court also finds that no certificate of appealability should issue here, since petitioner has not made a substantial showing of the denial of a constitutional right. *See*, 28 U.S.C. § 2253(c)(2) (providing that "[a] certificate of appealability may issue . . . only

if the applicant has made a substantial showing of the denial of a constitutional right");

*see also*, *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling stand-

ard, a petitioner must show that reasonable jurists could debate whether (or for that

matter, agree that) the petition should have been resolved in a different manner or that

the issues presented were adequate to deserve encouragement to proceed further") (ci-

tation and internal quotation marks omitted).

      IT IS SO ORDERED

Dated:  July 20, 2015
          Rochester, New York

                  ENTER:

                        /s/ Charles J. Siragusa
                        CHARLES J. SIRAGUSA
                        United States District Judge